UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMTEC OPTICAL SERVICES, LLC<br>*Plaintiff*<br><br>v.<br><br>MAXIMUM TRANSMISSION<br>TELECOM, LLC<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Cause No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff AMTEC OPTICAL SERVICES, LLC, by and through its undersigned counsel, files this Plaintiff's Original Complaint ("Original Complaint" herein) against Defendant MAXIMUM TRANSMISSION TELECOM, LLC d/b/a MaxTransmit and alleges as follows:

**I. THE PARTIES**

1. Plaintiff Amtec Optical Services, LLC ("Plaintiff" or "Amtec" herein) is a limited liability company that is organized under the State of Florida. Amtec has its principal place of business in Florida.

2. Defendant Maximum Transmission Telecom, LLC d/b/a MaxTransmit ("Defendant" or "MaxTransmit" herein) is a corporation that is incorporated under the laws of the State of Texas. Defendant has its principal place of business in the city of Boerne, Texas, which is part of Kendall County in the State of Texas. Defendant may be served with process by serving its

registered agent Dorothy Sisam at Maximum Transmission Telecom, LLC, 110 Industrial Dr., Boerne, TX 78006.

## II. JURISDICTION & VENUE

3. This court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy is over $75,000 and there is complete diversity of citizenship between the parties.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(1) because the sole Defendant resides in this district. In particular, the Defendant is located in Kendall County, Texas and therefore is covered by the San Antonio Division of the Western District of Texas.

## III. CONDITIONS PRECEDENT

5. All conditions precedent to this action have been performed, have occurred, or have been waived.

## IV. STATEMENT OF FACTS

6. On or around September 27, 2017, AMTEC and MAXTRANSMIT entered into a written agreement related to Hurricane Maria recovery relief efforts in Puerto Rico (hereinafter referred to as the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit A and is incorporated herein by reference.

7. Pursuant to the terms of the Contract, Plaintiff was to provide twenty-five (25), or more, teams of drivers, riders, and trucks to Puerto Rico to perform generator placement and refueling at telecom, cell, and other critical infrastructure locations per local direction provided by MAXTRANSMIT, the scope of which was outlined in paragraph 2.0 of the Contract.

8. In exchange for providing these services, Defendant agreed to compensate Plaintiff, as well as reimburse Plaintiff for certain expenses.

9. Defendant was to deliver payment to Plaintiff in Hillsborough County, Florida.

10. Due to the exigent circumstances of the situation (emergency hurricane recovery), some additional terms of the contract were negotiated and agreed to after execution of the original Contract, said terms which were later documented by emails and text messages.

11. As part of the agreement, Defendant was to arrange for all of Plaintiff's transportation to and from the island, as well as living expenses, meals, and drinking water while on the island.

12. At the request of Defendant, Plaintiff arranged for additional teams to be provided.

13. On or about October 2, 2017, Defendant initially advised Plaintiff that departure to the island would be at the Port of Tampa located in Hillsborough County, Florida.

14. On or about October 4, 2017, at Defendant's direction, Plaintiff departed Hillsborough County, Florida to arrive at the Port of Jacksonville, Florida, 200 miles away. Hours after departure from Hillsborough County, Florida, and after many teams had already arrived in Jacksonville, Defendant advised Plaintiff to redirect all teams who were not already in Jacksonville to the Port of Miami, Florida, 350 miles away.

15. Plaintiff then arrived in Miami, Florida; however, the ship providing transportation for Plaintiff, which was arranged by Defendant, was not available and Plaintiff was forced to incur additional expenses while waiting.

16. On or about October 5, 2017, Defendant advised Plaintiff to have all teams that had previously already arrived in Jacksonville, Florida to travel to Miami, Florida for departure

on a ship to be arranged for by MAXTRANSMIT. Seven (7) of the trucks that were already in Miami, Florida were then loaded onto the ship to depart and Defendant advised Plaintiff that the remainder of the trucks would depart the next morning on a different ship.

17. On or about October 6, 2017, and after many hours of delay, Defendant advised Plaintiff that there was no ship available in Miami, Florida, and that Plaintiff's teams would need to travel the 350 miles back to Jacksonville, Florida to wait for a ship to be made available there.

18. Later in the day of October 6, 2017, Defendant advised Plaintiff that a ship in Miami, Florida would be available the next morning, and then promised to pay Plaintiff a total of $1,500 for all 25 drivers as additional compensation for the hassle of them having to travel back and forth from one end of the state to the other. Plaintiff accepted this offer.

19. However, no additional ship was provided, and the remainder of the trucks did not depart as agreed to.

20. Pursuant to the terms of the Contract, Plaintiff provided the 25, or more, teams who were ready, willing, and able to perform as agreed upon, and each team duly arrived at the various locations for departure as directed by MAXTRANSMIT.

21. Despite the express terms and conditions of paragraph 2.0 of the Contract, Defendant failed to deploy all 25, or more, teams provided by Plaintiff, which caused Plaintiff significant financial loss.

22. Pursuant to the terms of the contract, living expenses, meals, and drinking water were to be provided to Plaintiff and its employees while on the island; however, these were not provided initially, which caused Plaintiff significant financial loss.

23. Pursuant to the terms of the Contract, Plaintiff provided services to Defendant on the island. A total of 732 hours of services, billed at the rate of $125 per hour pursuant to the terms of the contract, were performed by Plaintiff.

24. On October 20, 2017, Plaintiff and Defendant contracted for additional work. See Exhibit B attached hereto.

25. On October 21, 2017, without prior notice to Plaintiff, Defendant advised Plaintiff that all work on the project was being suspended.

26. On October 22, 2017, Plaintiff learned from hotel management, suddenly and again without prior notice, that their hotel room accounts were being closed out and that they needed to vacate the rooms.

27. Defendant then stranded Plaintiff's employees on the island without proper transportation, shelter, food, or water.

28. Later, pursuant to the agreement, Plaintiff submitted invoices to Defendant for services performed and expenses incurred, with payment to be made in Hillsborough County, Florida. To date, Defendant has failed to pay any of Plaintiff's invoices and Plaintiff has suffered damages.

29. Plaintiff performed all of the services required of it under the Contract.

30. Defendant has breached the Contract.

31. As a direct and proximate result of Defendant's breach of the Contract, Plaintiff suffered significant financial loss, for which Plaintiff is entitled to be compensated.

32. Despite and notwithstanding Plaintiff's demands that Defendant remedy its breach and compensate Plaintiff for its damages, Defendant has failed and refused, and continues to fail and refuse, to remedy its breach and compensate Plaintiff for its damages.

33. Plaintiff has retained the undersigned law firm to represent it in this lawsuit and has become obligated to pay reasonable fees and expenses for its services.

## V. CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

34. The Plaintiff incorporates the preceding paragraphs as if repeated fully here.

35. The parties entered into a valid Contract.

36. Plaintiff performed all of its obligations required of it under the Contract.

37. Defendant materially breached the Contract by failing to pay Plaintiff.

38. As a result of Defendant's material breach of the Contract, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, AMTEC OPTICAL SERVICES, LLC, respectfully demands judgment in its favor against Defendant, MAXIMUM TRANSMISSION TELECOM, LLC d/b/a MaxTransmit, for damages together with interest, costs, attorney's fees, and such other and further relief deemed just and proper.

### COUNT II - UNJUST ENRICHMENT

39. The Plaintiff incorporates the preceding paragraphs as if repeated fully here.

40. If Plaintiff does not prevail on its legal remedies such as its claim for breach of contract, Plaintiff lacks an adequate remedy at law.

41. Plaintiff conferred a benefit on the Defendant, who has knowledge of that benefit, and Defendant appreciated the benefit.

42. Plaintiff provided services and labor to Defendant.

43. Defendant accepted and retained the conferred benefit.

44. Under the circumstances it would be inequitable for Defendant to retain the benefit without paying for it.

WHEREFORE, Plaintiff, AMTEC OPTICAL SERVICES, LLC, respectfully demands judgment in its favor against Defendant, MAXIMUM TRANSMISSION TELECOM, LLC d/b/a MaxTransmit, for damages together with interest, costs, attorney's fees, and such other and further relief deemed just and proper.

### COUNT III – QUANTUM MERUIT

45. The Plaintiff incorporates the preceding paragraphs as if repeated fully here.

46. Plaintiff provided a benefit in the form of services and labor to Defendant.

47. Defendant assented to and received the services.

48. Defendant was aware that Plaintiff expected to be compensated.

49. Defendant was unjustly enriched thereby.

50. Plaintiff is entitled to the reasonable value of the labor and services performed.

WHEREFORE, Plaintiff, AMTEC OPTICAL SERVICES, LLC, respectfully demands judgment in its favor against Defendant, MAXIMUM TRANSMISSION TELECOM, LLC d/b/a MaxTransmit, for damages together with interest, costs, attorney's fees, and such other and further relief deemed just and proper.

### VI.   APPELLATE COSTS AND FEES

51. If this case should be appealed to the court of appeals, Plaintiff is entitled to the additional amount of 15% of all amounts awarded in the underlying suit. If this case should have a petition filed with the U.S. Supreme Court, Plaintiff is entitled to the additional amount of

$10,000. These fees are reasonable attorney fees for this case and have been or will be necessary.

## VII. PRAYER

52. For these reasons, Plaintiffs ask that they be granted judgment against Defendant for:

    a. Actual damages, including but not limited to economic damages, and any other actual damages incurred;

    b. Additional and/or exemplary damages as allowed by law;

    c. Pre-judgment and post-judgment interest;

    d. Costs of court;

    e. Reasonable and necessary attorneys' fees; and

    f. Such other and further relief, special and general, at law or in equity, for which Plaintiffs may show itself justly entitled.

Dated: April 30, 2018.

Respectfully Submitted,

/s/ Rain Minns

Rain Levy Minns
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Road, Suite 500
Austin, Texas 78759
Tel.: 512-520-4034
Fax: 512-861-2403